1   DAVID R. SINGH (Bar No. 300840)
    david.singh@weil.com
2   AMY LE (Bar No. 341925)
    amy.le@weil.com
3   WEIL, GOTSHAL & MANGES LLP
    201 Redwood Shores Parkway, 6th Floor
4   Redwood Shores, CA 94065-1134
    Telephone: (650) 802-3000
5   Facsimile: (650) 802-3100
6
7   DIANE P. SULLIVAN (*pro hac vice* forthcoming)
    diane.sullivan@weil.com
8   WEIL, GOTSHAL & MANGES LLP
    17 Hulfish Street, Suite 201
9   Princeton, NJ 08542
    Telephone: (609) 986-1120
10  Facsimile: (609) 986-1199
11
    Attorneys for Defendant BURGER KING CORPORATION
12
                    UNITED STATES DISTRICT COURT
13
                   NORTHERN DISTRICT OF CALIFORNIA
14
                          OAKLAND DIVISION
15

| | |
|---|---|
| AZMAN HUSSAIN, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-02258-HSG |
| Plaintiff, | **DEFENDANT BURGER KING CORPORATION'S NOTICE AND MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** |
| v. | |
| BURGER KING CORPORATION, | Date:   January 26, 2023 |
| Defendant. | Time:  2:00 pm |
| | Dept.:  Courtroom 2 – 4th Floor |
| | Judge:  Honorable Haywood S. Gilliam, Jr. |

16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO PLAINTIFF AND HIS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on January 26, 2023, at 2:00 pm, or as soon thereafter as the matter may be heard, before the Honorable Haywood S. Gilliam, Jr., in Courtroom 2, 4th Floor, Defendant Burger King Corporation ("Burger King") will and hereby does move to dismiss Plaintiff Azman Hussain's ("Plaintiff") Amended Complaint (Dkt. 13) filed in this action pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim upon which relief can be granted.

This Motion to Dismiss is submitted in the alternative if the Court denies Defendants' contemporaneously-submitted Motion to Compel Arbitration or Transfer.

This Motion to Dismiss is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, all other pleadings and papers on file herewith, and such other argument and evidence as may be presented to the Court.

Dated:  July 25, 2022

Respectfully submitted,

WEIL, GOTSHAL & MANGES LLP

By:     */s/ David R. Singh*
        DAVID R. SINGH

DAVID R. SINGH
david.singh@weil.com
AMY LE
amy.le@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Diane Sullivan (*pro hac vice* forthcoming)
diane.sullivan@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

1

2    Attorneys for Defendant BURGER KING
     CORPORATION

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  FACTUAL BACKGROUND.....................................................................................3

    A.   The Extensive Federal Regulatory Scheme for Food Contact Substances Permits Burger King's Use of PFAS in Packaging for the Whopper and French Fries ...................................................................................................3

    B.   Plaintiff's Complaint Seeks to Challenge These Federal and State Regulations ..............................................................................................5

III. LEGAL STANDARD.................................................................................................7

IV.  ARGUMENT.............................................................................................................8

    A.   Each of Plaintiff's Claims Is Preempted .........................................................8

    B.   Plaintiff's Fraud-Based Claims Fail For Multiple Reasons (Counts 1, 2, 4-7, 10, and 11) ..............................................................................................10

        1)   Plaintiff's UCL, CLRA, and FAL Claims Are Barred by the Safe Harbor Doctrine ...................................................................................10

        2)   Plaintiff Fails to Plead Reliance with Rule 9(b) Particularity .......................11

        3)   Plaintiff Fails to Identify Any Statements or Representations That Are Actionable, False or Misleading...................................................................13

        4)   Plaintiff's Negligence-Based Claims Are Further Barred by the Economic Loss Rule (Counts 11 and 14) ....................................................................15

    C.   Plaintiff's Omission-Based Claims Likewise Fail (Counts 4, 6, 9 and 14) ...........15

    D.   Plaintiff Cannot Establish A Breach of Any Warranty (Counts 3 and 13)............17

        1)   Plaintiff Fails to Identify the Terms of Any Express "Warranty".................17

        2)   Plaintiff's Song-Beverly Claim Fails Because He Cannot Establish that Burger King's Products are Unfit for Consumption or Fall Below a Minimum Level of Quality.....................................................................18

    E.   Plaintiff's Equitable Claims Must Be Dismissed (Counts 8 and 12)....................19

    F.   Plaintiff Has Failed to Plead A Claim for Medical Monitoring............................21

V.   PLAINTIFF LACKS STANDING TO SEEK PROSPECTIVE INJUNCTIVE RELIEF ....................................................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VI.   IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS OR STAY THE
      CASE UNDER THE PRIMARY JURISDICTION DOCTRINE ....................................23

VII.  CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................................. 16

*Almeida v. Apple Inc.*,
No. 21-CV-07109-VC, 2022 WL 1514665 (N.D. Cal. May 13, 2022) ...................... 12, 13

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
No. 17-CV-03805-LHK, 2018 WL 1710405 (N.D. Cal. Apr. 9, 2018) ......................... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 7, 8

*Azoulai v. BMW of N. Am. LLC*,
No. 16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ................... 13, 14

*Backus v. Biscomerica Corp.*,
378 F. Supp. 3d 849 (N.D. Cal. 2019) ........................................................... 9, 10, 15

*Backus v. Biscomerica Corp.*,
No. 16-CV-03916-HSG, 2017 WL 1133406 (N.D. Cal. Mar. 27, 2017) .............................. *passim*

*Backus v. Gen. Mills, Inc.*,
122 F. Supp. 3d 909 (N.D. Cal. 2015) ................................................................... 23, 24

*Barrett v. Apple Inc.*,
523 F. Supp. 3d 1132 (N.D. Cal. 2021) .............................................................................. 20

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) .............................................................................................. 22

*Beasley v. Lucky Stores, Inc.*,
400 F. Supp. 3d 942 (N.D. Cal. 2019) .............................................................................. 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................. 8

*Birdsong v. Apple Inc.*,
590 F.3d 955 (9th Cir. 2009) .............................................................................................. 19

*Brown v. Grimes*,
120 Cal. Rptr. 3d 893 (2011) .............................................................................................. 19

*Buckley v. Align Tech., Inc.*,
No. 13-CV-02812-EJD, 2015 WL 5698751 (N.D. Cal. 2015) ................................... 19, 20

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ................................................................................. 7

*Cohen v. Apple Inc.*,
  497 F. Supp. 3d 769 (N.D. Cal. 2020) ..................................................................... 8

*Davidson v. Apple Inc.*,
  No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14, 2017) ..................... 8

*Dinan v. SanDisk LLC*,
  844 F. App'x 978 (9th Cir. 2021) ........................................................................... 10

*Dinan v. SanDisk LLC*,
  No. 18-CV-05420-BLF, 2020 WL 364277 (N.D. Cal. Jan. 22, 2020) ..................... 10

*Eidmann v. Walgreen Co.*,
  522 F. Supp. 3d 634 (N.D. Cal. 2021) ................................................................... 14

*Fireman's Fund Ins. Co. v. Com. & Indus. Ins. Co.*,
  No. C-98-1060-VRW, 2000 WL 1721080 (N.D. Cal. Nov. 7, 2000) ....................... 20

*Hawkins v. Advancepierre Foods, Inc.*,
  No. 15-CV-2309-JAH (BLM), 2016 WL 6611099 (S.D. Cal. Nov. 8, 2016) ............. 3

*Hawkins v. Kellogg Co.*,
  224 F. Supp. 3d 1002 (S.D. Cal. 2016) .................................................................. 10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................................. 8

*Kumandan v. Google LLC*,
  No. 19-CV-04286-BLF, 2022 WL 103551 (N.D. Cal. Jan. 11, 2022) ................ 16, 17

*Ladore v. Sony Computer Ent. Am., LLC*,
  75 F. Supp. 3d 1065 (N.D. Cal. 2014) ................................................................... 15

*Love v. Ashford San Francisco II LP*,
  No. 20-CV-08458-EMC, 2021 WL 1428372 (N.D. Cal. Apr. 15, 2021) ............... 6, 12

*Lusson v. Apple Inc.*,
  No. 16-CV-00705-VC, 2016 WL 10932723 (N.D. Cal. June 20, 2016) ............... 11, 15

*Magic Leap, Inc. v. Chi Xu*,
  No. 19-CV-03445-LHK, 2020 WL 3268659 (N.D. Cal. June 17, 2020) ................... 15

*Mandani v. Volkswagen Grp. of Am., Inc.*,
  No. 17-CV-07287-HSG, 2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ................ 14, 18

*Norkunas v. Wynn Las Vegas, LLC*,
  343 F. App'x 269 (9th Cir. 2009) ............................................................................. 7

*Pirozzi v. Apple Inc.*,
 913 F. Supp. 2d 840 (N.D. Cal. 2012) ................................................................................. 13

*Price v. Apple Inc.*,
 No. 21-CV-02846-HSG, 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022).................................. 20

*Riva v. Pepsico, Inc.*,
 82 F. Supp. 3d 1045 (N.D. Cal. 2015) ................................................................................. 21

*Smith v. LG Elecs. U.S.A., Inc.*,
 No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) .......................... 13, 17, 18

*Sonner v. Premier Nutrition Corp.*,
 971 F.3d 834 (9th Cir. 2020) ............................................................................................... 20

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016)............................................................................................................ 7

*Swearingen v. Yucatan Foods, L.P.*,
 59 F. Supp. 3d 961 (N.D. Cal. 2014) ................................................................................... 23

*Syntek Semiconductor Co v. Microchip Tech., Inc.*,
 307 F.3d 775 (9th Cir. 2002) ............................................................................................... 23

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
 83 F. Supp. 3d 855 (N.D. Cal. 2015) ................................................................................... 17

*Tabler v. Panera LLC*,
 No. 19-CV-01646-LHK, 2020 WL 3544988 (N.D. Cal. June 30, 2020) .......................... 11, 12

*Transunion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021)........................................................................................................ 22

*Vitt v. Apple Computer, Inc.*,
 469 F. App'x 605 (9th Cir. 2012) ................................................................................... 13, 14

*Walker v. B&G Foods, Inc.*,
 No. 15-CV-03772-JST, 2019 WL 3934941 (N.D. Cal. Aug. 20, 2019).............................. 19

*Walker v. ConAgra Foods, Inc.*,
 No. 15-CV-02424-JSW, 2017 WL 11674907 (N.D. Cal. Mar. 31, 2017).............................. 8

*Wilson v. Hewlett-Packard Co.*,
 668 F.3d 1136 (9th Cir. 2012) ....................................................................................... 15, 16

**Statutes**

21 U.S.C. § 342(a)(1)........................................................................................................... 3, 4, 22

21 U.S.C. § 348 ......................................................................................................................... 3, 24

21 U.S.C. § 348(a) ...................................................................................................... *passim*

21 U.S.C. § 348(h) ................................................................................................................ 4

21 U.S.C. § 348(h)(1) ........................................................................................................... 4

21 U.S.C. § 348(h)(2)(A) ................................................................................................ 4, 24

Cal. Civ. Code § 1791.2(a)(2)(b) ....................................................................................... 18

Cal. Com. Code § 2313 ....................................................................................................... 18

Cal. Health & Safety Code § 109000 ...................................................................... 11, 19, 22

Cal. Health & Safety Code § 109000(a)(3) ...................................................................... 5, 6

Cal. Health & Safety Code § 109000(b) ............................................................................... 5

**Other Authorities**

21 C.F.R. §§ 170.100-170.106 ..................................................................................... 4, 9, 11

21 C.F.R. § 170.105 .......................................................................................................... 4, 5

87 F.R. 3949-01 ..................................................................................................... 5, 9, 10, 19

Fed. R. Civ. P. 8(a) ............................................................................................................... 7

Fed R. Civ. P. 9(b) ........................................................................................................ *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Plaintiff attempts in this lawsuit to evade the Food and Drug Administration's ("FDA") comprehensive regulation of food contact substances, including the packaging on Burger King's Whopper and French Fries.  Rife with conclusory assertions that Burger King's products are "unsafe" because the product packaging for the Whopper and French Fries contains certain per- and polyfluoralkyl substances ("PFAS"), the Amended Complaint ignores that "[s]ince the 1960s, the FDA has authorized specific PFAS for use in specific food contact applications," including in "food packaging."[1]  Burger King's food packaging uses authorized PFAS and, per federal law, the food products are accordingly not adulterated, not unsafe, and not illegal for sale.  California law likewise still permits the use of PFAS and has enacted a phasing-out program that does not limit the use of PFAS in food packaging until January 1, 2023 and, even then, will permit the use of PFAS below a specified level.  As set forth below, this fundamental flaw, and a litany of other deficiencies, requires dismissal of the Amended Complaint in its entirety.

*Federal Law Preempts All of Plaintiff's Claims.*  As an initial matter, Plaintiff's claims are inconsistent with and preempted by the Federal Food, Drug, and Cosmetic Act's comprehensive regulatory process governing food contact substances like PFAS.  Through this regulatory process, the FDA specifically considered reports by consumer advocacy groups regarding PFAS and has determined that the type of PFAS used in the packaging at issue are safe.  Plaintiff cannot use litigation to overturn this FDA regulatory determination.  As such, the Court should dismiss all of Plaintiff's claims.

*Plaintiff Has Not Plead any Actionable Fraud-Based Claims.*  Plaintiff's fraud-based claims suffer from numerous other pleading deficiencies.  Because Burger King's use of PFAS is specifically authorized by the FDA and California law, Plaintiff's Unfair Competition Law, Consumer Legal Remedies Act, and False Advertising Law claims fail as a matter of law.  Further, each of Plaintiff's fraud and misrepresentation claims fail because Plaintiff fails to plead reliance with requisite Rule 9(b)

---

[1] U.S. Food & Drug Admin., *Authorized Uses of PFAS in Food Contact Applications* (Feb. 24, 2022), https://www.fda.gov/food/chemical-contaminants-food/authorized-uses-pfas-food-contact-applications (RJN Ex. A). Defendant has filed a Request for Judicial Notice simultaneously with this Motion to Dismiss. Exhibits to that Request for Judicial Notice are cited as (RJN Ex. __).

particularity and, in any event, fails to identify any actionable or false statement by Burger King that a reasonable consumer would interpret as representing that Burger King's food packaging for the Whopper and French Fries does not contain permitted PFAS.  Similarly, Plaintiff's omission-based claims likewise fail as Plaintiff has failed to allege a duty to disclose or that Burger King had knowledge of any purported "defect" (*i.e.*, that its packaging was not "safe") and ignores that the very website he cites in support of his claims discloses the use of PFAS in Burger King's packaging.

   ***Plaintiff Has Not Plead any Actionable Warranty Claims.***  Plaintiff's claims for breach of express and implied warranties and for violation of the Song-Beverly Act should fare no better.  The Amended Complaint does not identify the terms of the purported "express" warranty on Whoppers, French Fries, or other food products, nor plausibly allege that any statement formed part of the basis of the bargain.  The implied warranty claim fails because Plaintiff cannot plausibly allege that Burger King's products are not fit for human consumption.  Indeed, the FDA's authorizations establish as a matter of law that the use of PFAS in packaging does not render Burger King's food products unsafe. Without an actionable state law warranty claim, the Song-Beverly claim must fail too.

   ***Plaintiff Has Not Plead any Actionable Equitable Claims.***  Plaintiff's equitable claims suffer from additional flaws.  Plaintiff's own allegations claim that he has an adequate legal remedy, which forecloses the availability of equitable relief.  Moreover, Plaintiff cannot even establish the most basic elements of his Money Had and Received claim.

   ***Plaintiff Lacks Standing to Seek Prospective Injunctive Relief.***  Plaintiff also lacks standing to secure prospective injunctive relief requiring Burger King to provide what he terms "accurate disclosures."  Plaintiff's theory of injury is that he suffered an informational injury by Burger King not disclosing to him that its food packaging is allegedly not "safe"; this theory, however, does not suffice to establish a concrete injury as required for Article III standing and fails as a matter of law because it stands in direct conflict with the FDA regulatory approval process providing that Burger King's use of PFAS in packaging for the Whopper and French Fries does *not* render the products unsafe.

   At bottom, Plaintiff's Amended Complaint is a plea for regulatory reform that is better addressed to the political branches, not the courts.  Indeed, both the FDA and California legislature have rejected Plaintiff's preference that *all* PFAS be banned immediately, much less retroactively.  These fundamental

1    failures render any leave to amend futile.  The Amended Complaint should be dismissed with prejudice.

2    If not dismissed due to pleading deficiencies or lack of subject matter jurisdiction, it should be dismissed

3    without prejudice or stayed so Plaintiff's concerns can be addressed to the regulators with primary

4    jurisdiction.

5    **II.     FACTUAL BACKGROUND**

6           **A.     The Extensive Federal Regulatory Scheme for Food Contact Substances Permits
                   Burger King's Use of PFAS in Packaging for the Whopper and French Fries**

7           The United States Congress has vested the FDA with the authority to regulate the safety of

8    ingredients used in foods and beverages through the Federal Food, Drug, and Cosmetic Act ("FFDCA").

9    "Specifically, the [FFDCA] requires the FDA to (i) ensure that 'foods are safe, wholesome, sanitary, and

10   properly labeled,' (ii) promulgate regulations to enforce the provisions of the FDCA, and (iii) enforce

11   its regulations through administrative proceedings." *Hawkins v. Advancepierre Foods, Inc.*, No. 15-CV-

12   2309-JAH (BLM), 2016 WL 6611099, at *3 (S.D. Cal. Nov. 8, 2016), *aff'd*, 733 F. App'x 906 (9th Cir.

13   2018) (citing 21 U.S.C. §§ 371, 393(b)(2)(A); 21 C.F.R. § 7.1 *et seq*).

14          In 1958, Congress enacted the Food Additives Amendment to the FFDCA in order to "protect

15   the public health by amending the [FFDCA] to prohibit the use in food of additives which have not been

16   adequately tested to establish their safety."  Pub. L. No. 85-929, 72 Stat. 1784, 1784 (1958).  Through

17   the Food and Drug Administration Modernization Act of 1997, Congress further amended the FFDCA

18   to include regulation concerning food contact substances, such as food packaging.  *See* Pub. L. 105–115,

19   111 Stat. 2296 (1997).  Now codified at 21 U.S.C. § 348(a), these amendments provide that a "food

20   additive shall . . . be deemed unsafe . . . *unless*" in the case of a "food contact substance," there is either

21   "in effect, and such substance and the use of such substance are in conformity with, a regulation issued

22   under this section prescribing the conditions under which such additive may be safely used" or there is

23   "a notification submitted under subsection (h) that is effective."  *Id*. (emphasis added).  Further, the Act

24   provides that while a regulation or "notification under subsection (h)(1)" relating to a food contact

25   substance is in effect and has not been revoked, "a food *shall not*, by reason of bearing or containing

26   such a food additive in accordance with the regulation or notification, be considered adulterated" under

27

28

Section 342(a).  *Id*. (emphasis added).[2]

Subsection (h), in turn, provides an exhaustive process for the submission and FDA review of notifications relating to food contact substances.  *See* 21 U.S.C. § 348(h).  Pursuant to this Congressional mandate, the FDA has issued regulations governing the submission of and FDA action on premarket notifications for food contact substances ("FCN").  *See* 21 C.F.R. §§ 170.100-170.106.  In sum, a manufacturer or supplier of a food contact substance may "at least 120 days prior to the introduction or delivery" of a food contact substance, "notify the Secretary of the identity and intended use of the food contact substance, and of the determination of the manufacturer or supplier that the intended use of such food contact substance is safe under the standard described in subsection (c)(3)(A)."  21 U.S.C. § 348(h)(1).  Such a notification becomes effective after this 120-day period, unless the Secretary makes a determination within that period that "based on the data and information before the Secretary, such use of the food contact substance has not been shown to be safe under the standard described in subsection (c)(3)(A), and informs the manufacturer or supplier of such determination."  *Id*. § 348(h)(2)(A).[3]  The regulations also provide that if the "FDA determines that an FCN is no longer effective," it will inform the manufacturer or supplier "in writing" and provide the manufacturer or supplier "an opportunity to show why the FCN should continue to be effective."  21 C.F.R. § 170.105.  Further, the "FDA's determination that an FCN is no longer effective is [] subject to judicial review."  *Id*.

The FDA has regulated the use of PFAS in food packaging in accordance with this scheme.  "Since the 1960s, the FDA has authorized specific PFAS for use in specific food contact applications," including in "food packaging."  *See* n.1, *supra*.  Plaintiff does not—and cannot—allege that the PFAS in the packaging for Burger King's Whopper and French Fries is not authorized.  In fact, Burger King only permits the use of food contact substances that have been approved for use in food packaging by the FDA.  *See* Declaration of Diego Beamonte in Support of Burger King's Motion to Dismiss

---

[2] Section 342(a) concerns "adulterated food" and provides that food "shall be deemed to be adulterated" where "it is or if it bears or contains (i) any food additive that is unsafe within the meaning of section 348 of this title."  21 U.S.C. § 342(a)(1).

[3] *See also* U.S. Food & Drug Admin., *About the FCS Review Program* (Jan. 25, 2022), https://www.fda.gov/food/inventory-effective-food-contact-substance-fcs-notifications/about-fcs-review-program ("If the agency does not express any objections about the safety of the substance in that time-period, then the company can legally market the product.") (RJN Ex. B).

1   ("Beamonte Decl.") at ¶ 4.   Accordingly, the wrappers used on Burger King's products are not

2   adulterated, 21 U.S.C. § 342(a)(1), or unsafe, 21 U.S.C. § 348(a), and their use is authorized, 21 U.S.C.

3   § 348(h).

4       The FDA has recently reviewed certain PFAS used on food contact paper.  *See* n.1, *supra*.  It has

5   not determined that the FCN for these PFAS is no longer effective, nor followed the procedure set forth

6   in 21 C.F.R. § 170.105; rather, certain manufacturers have reached agreements with the FDA to

7   voluntarily phase out these certain PFAS within three years from January 1, 2021 (*i.e.*, by 2024).  *See*

8   Food Additives:  Food Contact Substance Notification That Is No Longer Effective, 87 F.R. 3949-01

9   (proposed regulation explaining "voluntary" process, noting that, in the meanwhile, "these FCNs remain

10  effective"); n.1, *supra*; RJN Ex. C (FDA Food Contact Substance FCN Number database).

11      California has also adopted a phasing-out program for "regulated" PFAS, which provides a

12  phasing-out period such that by January 1, 2023 the sale of "food packaging that contains regulated

13  perfluoroalkyl and polyfluoroalkyl substances or PFAS" will be prohibited.  Cal. Health & Safety Code

14  § 109000(b).  Recognizing that the presence of some level of PFAS is acceptable, California defines

15  "regulated" PFAS as either that which is "intentionally added" or has a presence of more than 100 parts

16  per million.  *Id*. § 109000(a)(3).  Importantly, neither the FDA nor California currently prohibits the use

17  of PFAS, nor have they previously prohibited the use of PFAS.  Accordingly, the use of PFAS in

18  compliance with a FCN is permitted and recognized as safe.

19      **B.**    **Plaintiff's Complaint Seeks to Challenge These Federal and State Regulations**

20      Plaintiff Azman Hussain is a California resident who allegedly purchased Burger King's

21  Whopper or French Fries "for several years," most recently in March 2022.  Am. Compl. ¶ 11.

22  Apparently unsatisfied with the FDA's decision-making, or the scope or speed of the FDA and California

23  phasing-out program, Plaintiff filed this lawsuit alleging that the packaging Burger King's Whopper and

24  French Fries "are unfit for human consumption because the packaging in which they are contained"

25  "contain heightened levels of organic fluorine and unsafe [PFAS]."  *Id*. ¶ 1.  Plaintiff claims that Burger

26  King deceived customers because it markets its products "as safe and sustainable."  *Id*. ¶ 21.  Without

27  identifying precisely which statements he allegedly viewed (or when he viewed them), Plaintiff lists a

28  series of advertisements by Burger King, including advertisements stating "Have it Your Way, the Real

1   way; All the flavors you crave without the ingredients you don't" (*id.* ¶ 22), "[w]e want to look how we

2   taste," (*id.* ¶ 29), and "[n]o secrets in our sauce," (*id.* ¶ 31).  Plaintiff also cites statements on the website

3   of a marketing company, Jones Knowles Ritchie, which discuss its work on Burger King's "global

4   rebrand." *Id.* ¶¶ 25-26.  Yet, while it quotes generic statements regarding "highest standards" and Burger

5   King's desire to feel "more real, crave-able and tasty," (*id.*), it ignores that these statements are not by

6   Burger King at all.  Likewise, Plaintiff also cites a generic statement by an employee of Burger King's

7   parent company regarding "food quality," as well as the opinion of "eslogan Marketing Magazine"

8   regarding Burger King's "change towards transparency and sustainability." *Id.* ¶¶ 27, 35-36.  Only three

9   advertisements or statements include product packaging, and notably none contains any representation

10  about the packaging contents beyond updating Burger King's "unified visual identity" and "sustainable

11  packaging."  *Id.* ¶¶ 34, 38-39.  As a whole, Plaintiff contends that these advertisements assure customers

12  that Burger King's products are "safe and sustainable" when in fact the product packaging contains

13  PFAS.  *Id.* ¶ 40.

14        Taking issue with the FDA's regulations to the contrary, Plaintiff claims that because the

15  "packaging contains" PFAS, Burger King's products are "worthless" and "not in fact safe and

16  sustainable." *Id.* ¶¶ 60, 61.  As support for purported health concerns, Plaintiff cites an article published

17  by "Toxic Free Future" in 2018 that it claims "demonstrated" that Burger King's products "contained

18  heightened levels of organic fluorine," (*id.* ¶ 45) and a February 2019 publication regarding "packaging

19  for Defendant's French Fries" (*id.* ¶ 42).  Plaintiff also cites a March 2022 "Consumer Reports" article

20  that identified certain amounts of organic fluorine in certain packaging. *Id.* ¶¶ 5, 46.  Plaintiff omits that

21  the article did not test for specific PFAS, relying instead on an "organic fluorine" screening test as a

22  surrogate for PFAS and noting that there are "other sources" of organic fluorine that are not PFAS.[4]

23  Plaintiff contends that the Consumer Reports article evidenced "a material amount" of PFAS in the

24  French Fries' container, despite the observed amount (13 ppm) falling below what even the article

25

26  _____

    [4]Am. Compl. ¶ 5, n.5 (citing Kevin Loria, "Dangerous PFAS Chemicals Are in Your Food Packaging,"
27  Consumer Reports, https://www.consumerreports.org/pfas-food-packaging/dangerous-pfas-chemicals-
    are-in-yourfood-packaging-a3786252074/).  The Court can take judicial notice of the article's contents
28  as it is cited extensively in the Amended Complaint.  *See Love v. Ashford San Francisco II LP*, No. 20-
    CV-08458-EMC, 2021 WL 1428372, at *3 (N.D. Cal. Apr. 15, 2021).

1   advocates for as a threshold (n.4, *supra* ("CR's experts support the 20-ppm limit")) and ignoring that

2   even the California law that will become effective in 2023 will still permit up to 100 ppm of PFAS in

3   product packaging. *See* Cal. Health & Safety Code § 109000(a)(3).  Notably, Plaintiff omits any mention

4   that federal and California laws and regulations permit the use of PFAS.  While claiming concealment

5   and misrepresentation, Plaintiff also ignores that Burger King's use of PFAS—and intention to phase

6   out such use—was disclosed on the very website of Burger King's parent company that Plaintiff cites in

7   his complaint (Am. Compl. ¶ 38 n.25).[5]

8          Ignoring the FDA's approval which permits the use of PFAS pursuant to a FCN, Plaintiff's

9   Amended Complaint asserts a scattershot of claims for (1) Violation of California's Unfair Competition

10  Law ("UCL"); (2) Violation of California's Consumer Legal Remedies Act ("CLRA"); (3) Breach of

11  Implied Warranty Under the Song-Beverly Act; (4) Violation of California's False Advertising Law

12  ("FAL"); (5) Fraud; (6) Constructive Fraud; (7) Fraudulent Inducement; (8) Money Had and Received;

13  (9) Fraudulent Concealment or Omission; (10) Fraudulent Misrepresentation; (11) Negligent

14  Misrepresentation; (12) Quasi-Contract/Unjust Enrichment; (13) Breach of Express Warranty; and (14)

15  Negligent Failure to Warn.

16  **III.   LEGAL STANDARD**

17         A court must dismiss a complaint under Rule 12(b)(1) if it lacks subject-matter jurisdiction.  *See*

18  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).  Plaintiff, as the "party

19  invoking federal jurisdiction," bears the "burden of establishing" jurisdiction and Article III standing.

20  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Chandler*, 598 F.3d at 1122.  In deciding

21  a factual attack to Plaintiff's allegations of jurisdiction, the Court may "consider evidence outside the

22  complaint without converting the motion into a summary judgment motion."  *Norkunas v. Wynn Las*

23  *Vegas, LLC*, 343 F. App'x 269, 270 (9th Cir. 2009).

24         In addition, to survive a motion to dismiss for failure to state a claim brought under Rule 12(b)(6),

25

---

26  [5]*See*   Restaurant   Brands   International,   Packaging   &   Recycling,
    https://www.rbi.com/English/sustainability/packaging-and-recycling/default.aspx; *see also* June 16,
27  2021   Annual   Meeting   of   Shareholders,   Recording   at   18:30,   available   at
    https://www.rbi.com/English/investors/events-and-presentations/default.aspx.
28

1   a complaint must satisfy the pleading requirements of Rule 8(a).  This requires that a complaint "contain

2   sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

3   556 U.S. 662, 678 (2009) (citation omitted).  This standard "asks for more than a sheer possibility that a

4   defendant has acted unlawfully." *Id*.  Accordingly, "where the well-pleaded facts do not permit the court

5   to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] 'that the pleader

6   is entitled to relief.'" *Id*. at 679 (citation omitted).  A complaint must also put forth "more than an

7   unadorned, the defendant-unlawfully-harmed-me accusation."  *Id*. at 678.  Mere "labels and

8   conclusions" and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*

9   *v. Twombly*, 550 U.S. 544, 555 (2007).

10          Where, as here, a plaintiff alleges "a unified course of fraudulent conduct" and "rel[ies] entirely

11   on that course of conduct as the basis of that claim," the claim is grounded in fraud regardless of the

12   label of the claim, and Rule 9(b) applies.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.

13   2009).  A claim grounded in fraud must "state with particularity the circumstances constituting fraud."

14   Fed. R. Civ. P. 9(b). To satisfy this heightened standard, "claims sounding in fraud must allege 'an

15   account of the time, place, and specific content of the false representations as well as the identities of the

16   parties to the misrepresentations.'" *Davidson v. Apple Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048,

17   at *4 (N.D. Cal. Mar. 14, 2017) (citation omitted).  When asserting a fraud-based claim, the plaintiff

18   must also set forth "'what is false or misleading about a statement, and why it is false.'"  *Id*. (citation

19   omitted); *see also Kearns*, 567 F.3d at 1124 ("A party alleging fraud must 'set forth *more* than the neutral

20   facts necessary to identify the transaction.'") (citation omitted).

21          As detailed further below, Plaintiff's claims fail under each of these standards.

22   **IV.     ARGUMENT**

23          **A.     Each of Plaintiff's Claims Is Preempted**

24          Under the Supremacy Clause, "'federal law can preempt and displace state law through: (1)

25   express preemption; (2) field preemption (sometimes referred to as complete preemption); and (3)

26   conflict preemption.'" *Walker v. ConAgra Foods, Inc.*, No. 15-CV-02424-JSW, 2017 WL 11674907, at

27   *2 (N.D. Cal. Mar. 31, 2017) (citing *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003)).  "Conflict

28   preemption applies when 'compliance with both federal and state regulations is a physical impossibility,

or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (citation omitted); *see also Cohen v. Apple Inc.,* 497 F. Supp. 3d 769, 780 (N.D. Cal. 2020) ("[A] state law is preempted if it 'stands as an obstacle to the accomplishment of the full purposes and objectives' of a federal law.") (citation omitted).

*Each* of Plaintiff's claims depends on the assertion that Burger King's use of PFAS in product packaging for the Whopper and French Fries renders its products unsafe and not fit for consumption. *See, e.g.,* Am. Compl. ¶¶ 1, 9, 63, 117, 129, 217. This assertion that the use of PFAS renders food "unsafe" is contrary to the text of the FFDCA. On this score, Congress has spoken directly:

> "[w]hile . . . a *notification under subsection (h)(1)* relating to a food additive that is a food contact substance, *is in effect*, and has not been revoked pursuant to subsection (i), a *food shall not*, by reason of bearing or containing such a food additive in accordance with the regulation or notification, *be considered adulterated*."

21 U.S.C. § 348(a) (emphasis added). Further, a "food additive shall . . . be deemed to be unsafe . . . *unless* . . . in the case of a food additive as defined in this chapter that is a food contact substance, there is . . . a notification submitted under subsection (h) that is effective." *Id.* (emphasis added). Plaintiff has not alleged that Burger King's packaging for the Whopper and French Fries has not been approved or that the FCN is somehow not effective. Indeed, as explained above, the food packaging used by Burger King has effective FCNs that have not been revoked. *See* Beamonte Decl. ¶ 5. While the FDA has announced a voluntary phase-out of certain (but not all) PFAS, it has acknowledged that in the interim "these FCNs remain effective." 87 F.R. 3949-01. Plaintiff's allegations—resting on the opposite assertion that the products are adulterated and unsafe—are therefore preempted. Importantly, Plaintiff's assertion to the contrary—which would have the effect of declaring the use of PFAS pursuant to an effective FCN illegal immediately (and even retroactively)—would stand as an obstacle to the purposes and objectives of the comprehensive FDA regulatory scheme that authorized their use. *See* 21 U.S.C. § 348(a); 21 C.F.R. §§ 170.100-170.106.

This Court's two rulings in *Backus v. Biscomerica Corp.* are particularly instructive as each rejected the plaintiff's attempt to declare the use of a food additive illegal despite FDA regulations approving its use. *See Backus v. Biscomerica Corp.*, No. 16-CV-03916-HSG, 2017 WL 1133406, at *3 (N.D. Cal. Mar. 27, 2017) (Gilliam, J.); *Backus v. Biscomerica Corp.*, 378 F. Supp. 3d 849, 856 (N.D.

Cal. 2019) (Gilliam, J.).  As this Court explained, there the federal government had determined that "food containing PHO" was not "even considered unsafe or adulterated until June 2018." *Backus*, 2017 WL 1133406, at *3.  The Court likewise recognized the FDA's review of scientific evidence on the issue and decision to identify a "compliance date" for transition away from PHOs given "market limitations preventing the immediate 'transition to new oils.'"  *Id.* ("The Supreme Court has previously acknowledged that providing time to phase in new standards is a legitimate objective").  As in *Backus*, Plaintiff here seeks an immediate declaration that PFAS are unsafe and illegal based on state law which would conflict with the federal FCN program providing a phasing out of specific PFAS for a three-year period (during which the FCN approvals "remain effective," 87 F.R. 3949-01).[6]  This interpretation would "'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" and is therefore preempted.  *Backus*, 2017 WL 1133406, at *2; *see also Backus*, 378 F. Supp. 3d at 856 (reaching same conclusion that "such a delayed and drastic measure would stand as an obstacle to the FDA's careful considerations"); *see also Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 952 (N.D. Cal. 2019) (holding plaintiff's challenge to use of PHO in Coffee-mate preempted because plaintiff's claim would "effectively negate" the FDA's contrary determination regarding safety); *Hawkins v. Kellogg Co.*, 224 F. Supp. 3d 1002, 1012-13 (S.D. Cal. 2016) (holding that where Congress provided that "foods shall not be considered adulterated based on their PHO content," the assertion that the sale of products containing PHOs was unlawful was preempted).

For these reasons, all of Plaintiff's claims must be dismissed.

**B.  Plaintiff's Fraud-Based Claims Fail For Multiple Reasons (Counts 1, 2, 4-7, 10, and 11)**

**1)  Plaintiff's UCL, CLRA, and FAL Claims Are Barred by the Safe Harbor Doctrine**

"California law provides that courts may not find a business practice unfair under its broad consumer protection statutes when the legislature has permitted that practice." *Dinan v. SanDisk LLC*, 844 F. App'x 978, 979 (9th Cir. 2021) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 542 (1999)).  Federal law can also provide the basis for such a "safe harbor."  *See id.*  The

---

[6] As discussed above, Plaintiff's demands for immediate cessation of the use of all PFAS (*e.g.,* Am. Compl. ¶ 108) is inconsistent with even California law on the subject.

1   "safe harbor doctrine extends beyond 'mandatory' regulations:  It covers conduct that is 'clearly

2   permitted'—even if not required."  *Dinan v. SanDisk LLC*, No. 18-CV-05420-BLF, 2020 WL 364277,

3   at *11 (N.D. Cal. Jan. 22, 2020) (citation omitted); *see also Backus*, 2018 WL 1133406, at *2 ("The

4   UCL cannot, however, be used to proscribe otherwise permitted conduct.").

5         As discussed in Section IV.A., *supra*, regarding preemption, Burger King's use of food

6   packaging for the Whopper and French Fries that contains PFAS is permitted by the relevant statutes

7   and FDA regulations that authorize such use pursuant to a FCN.  *See* 21 U.S.C. § 348(a); 21 C.F.R.

8   §§ 170.100-170.106.  Further, California law similarly permits the use of PFAS through January 1, 2023

9   (and without any end for products with organic fluorine below 100 ppm).  *See* Cal. Health & Safety Code

10  § 109000.  The California law specifically notes that the regulations apply to "food packaging," like that

11  at issue here.  *Id*.  Because the use of PFAS by Burger King is permitted by federal and California law,

12  each of Plaintiff's consumer protection claims must be dismissed.

13         **2)        Plaintiff Fails to Plead Reliance with Rule 9(b) Particularity**

14         Where, as here, Plaintiff's fraud-based claims are premised on "misleading advertising," "Rule

15  9(b) requires the plaintiff to allege 'the particular circumstances surrounding [the] representations' at

16  issue."  *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2020 WL 3544988, at *6 (N.D. Cal. June 30,

17  2020) (Koh, J.) (citation omitted).   This includes specifying *which* advertisements and statements

18  "described in the complaint Plaintiff actually relied upon before purchasing any products."  *Id*. at 7

19  (citation and internal quotation marks omitted).  Plaintiff's conclusory allegations in the Amended

20  Complaint fail to meet this bedrock requirement.  He offers only the general assertion that he "reviewed

21  the labeling, packaging, and marketing materials of his Products, including those set out herein, including

22  that the Products were safe and sustainable" and "reasonably relied on these representations and

23  warranties" in making his purchases.  Am. Compl. ¶ 11.  This conclusory assertion is not enough to

24  provide the particular circumstances regarding his reliance in accordance with Rule 9(b).  *See Lusson v.

25  Apple Inc.*, No. 16-CV-00705-VC, 2016 WL 10932723, at *2 (N.D. Cal. June 20, 2016) (dismissing

26  claim where "the complaint doesn't seem to allege that the plaintiffs relied on those statements at all,

27  except in the most conclusory terms").  As in *Lusson*, this conclusory allegation is not "'specific enough

28  to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged

so that they can defend against the charge and not just deny that they have done anything wrong."' *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

In particular, Plaintiff's general allegation leaves Burger King guessing as to *which* statements Plaintiff actually viewed, if any.  Notably, while generally alleging he "reviewed the labeling, packaging, and marketing materials of his Products," he fails to allege whether he actually reviewed (and is basing his claim on) representations on Defendant's website (*e.g.* Am. Compl. ¶¶ 11, 22-24), commercial (*id.* ¶ 34) or parent company's investor report and executive statements (*id.* ¶¶ 27, 35, 38-39).  This is important for many reasons, including that the Amended Complaint purports to rely on statements made by a third-party marketing company (Jones Knowles Ritche) and "eslogan Marketing Magazine" regarding *their opinions* of Burger King's rebranding and "visual identity" (*e.g. id.* ¶¶ 25-26, 28, 36).[7]  Further, Burger King is entitled to understand which specific statements Plaintiff claims to have relied upon, particularly where not a single cited statement uses the word "safe" or "safety."  *See Tabler*, 2020 WL 3544988, at *7 (plaintiff's failure to specify which statements she relied on was "problematic" because the complaint contained a number of "advertisements with different language").

Plaintiff's general allegation also leaves Burger King guessing as to *when* he viewed any of these statements.  Most of the cited statements appear to have occurred in 2021 after Burger King completed its rebranding.  *See* Am. Compl. ¶¶ 38, 39.  Notably, this is three years *after* Plaintiff alleges that a publicly-available study by Toxic Free Future "demonstrated that [Burger King's] Products contained heightened levels of organic fluorine," (*id.* ¶ 45) two years *after* another publicly available study allegedly confirmed that "packaging for Defendant's French Fries contain harmful PFAS," (*id.* ¶ 42), and the *same year* as Burger King's parent company itself explained that Burger King was phasing out the use of PFAS (available on the same website Plaintiff cites to support its allegations) (*id.* ¶ 38 n.25; *supra* n.5).  Plaintiff's general allegation is insufficient under Rule 9(b) as it does not provide Burger

---

[7] The Amended Complaint misleadingly describes this company as Defendant's "partner" (*id.* ¶ 25) and notably misattributes statements made by it to "Defendant".  *See id.* ¶ 26 ("Defendant claims that 'For Burger King's first global rebrand in more than two decades, *we* set out …'") (emphasis added); *id.* ¶ 28 ("as Defendant notes").  As the actual cited website (*id.* ¶ 25 n.15) makes clear, those statements and the "we" in "we set out" were made by and refer to Jones Knowles Ritche, not Burger King.  *See* Jones Knowles Ritche, "Burger King," https://jkrglobal.com/case-studies/burger-king/.  Because Plaintiff quoted this website content, the Court can review the website and take judicial notice of its contents.  *See Love*, 2021 WL 1428372, at *3.

King (or the Court) sufficient information about when Plaintiff allegedly relied on these statements, in order to evaluate his claim that he was deceived. *See Almeida v. Apple Inc.,* No. 21-CV-07109-VC, 2022 WL 1514665, at *1 (N.D. Cal. May 13, 2022) ("The complaint alleges a litany of misrepresentations and omissions, but it does not allege with particularity which marketing materials each plaintiff relied upon and when or whether the plaintiffs would have seen the information about the defect, had it been disclosed."); *Pirozzi v. Apple Inc.,* 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012). Plaintiff's claims should be dismissed for failure to plead reliance with the requisite particularity.

### 3)   Plaintiff Fails to Identify Any Statements or Representations That Are Actionable, False or Misleading

All of Plaintiff's fraud-based claims fail for the additional reason the Amended Complaint has "not identified actionable statements that are false or misleading." *Almeida*, 2022 WL 1514665, at *1. The Amended Complaint refers to a host of statements, *none of which* makes any representations regarding the presence or non-presence of PFAS. Instead, all relate to generic marketing statements that (1) are not actionable; (2) were not made by Burger King; and/or (3) even if actionable, are not false or misleading.

First, "[t]o be actionable, a statement must be 'specific and measurable' and capable of being proven true or false." *Azoulai v. BMW of N. Am. LLC,* No. 16-CV-00589-BLF, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (citation omitted).  Far from being actionable, the Amended Complaint alleges only "[g]eneralized, vague, and unspecific assertions," *id*. (citation omitted), which "sa[y] nothing about the specific characteristics or components" of Burger King's packaging, *Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *6 (N.D. Cal. Mar. 11, 2014). Specifically, the Amended Complaint lists advertisements promoting the ability to "Have it Your Way, the Real way" "All the flavors you crave without the ingredients you don't," (Am. Compl. ¶ 22), "We want to look how we taste," (*id.* ¶ 29), "No secrets in our sauce" (*id.* ¶ 31), "real tender, real crispy, real melty," (*id.* ¶ 32), and that "It's the start of a NEW ERA; We're more REAL" (*id.* ¶ 33).  Similarly, generic statements by Burger King regarding corporate responsibility and corporate commitment to being "good corporate citizens" that consider "sourcing and environmental impact" are not actionable. *Id.* ¶¶ 23, 24. *See Vitt v. Apple Computer, Inc.,* 469 F. App'x 605, 607 (9th Cir. 2012) (affirming dismissal based on finding

1   that descriptors "durable," "built to withstand reasonable shock," "reliable," "high performance," "high

2   value," an "affordable choice," and an "ideal student laptop" were not actionable because they are

3   "inherently vague and generalized terms" and "not factual representations that a given standard has been

4   met").  Likewise, the statements by representatives of Burger King's parent company RBI are similarly

5   generic assertions that are not actionable regarding "brand personality," (*id.* ¶ 27), making "serious

6   commitments around sustainability," (*id.* ¶ 35), updating "visual identity," (*id.* ¶ 38), and making "large

7   shifts" over the past year "in our use of real ingredients," (*id.* ¶ 39).  Even if statements regarding efforts

8   towards sustainability were specific enough to be actionable (they are not), they notably simply refer to

9   progress and "work" (*id.*) on sustainability, not a factual representation that all its products are

10  completely sustainable.  *See Vitt*, 469 F. App'x at 607.

11          Plaintiff's claims rest on the assertion that Burger King's advertising "emphasized safety."  Am.

12  Compl. ¶ 37.  Initially, Plaintiff fails to identify a single statement regarding "safety" of the packaging.

13          Plaintiff also fails to identify any actionable representation.  This Court has previously explained,

14  "[a]s many cases have found before, general "safety" claims are nonactionable[.]"  *Mandani v.*

15  *Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287-HSG, 2019 WL 652867, at *4 (N.D. Cal. Feb. 15,

16  2019) (Gilliam, J.) (collecting cases); *Azoulai*, 2017 WL 1354781, *8 ("Contrary to what Plaintiffs

17  contend, there is nothing 'specific and measureable' about the word 'safety.'") (citation omitted).[8]

18  Because the Amended Complaint fails to cite a single actionable representation, the fraud-based claims

19  must be dismissed.

20          Further, even if the statements Plaintiff identifies were actionable—they are not—he does not

21  plead facts making it plausible that a reasonable consumer would believe any such statement about

22  sustainability and food quality to be a representation regarding the contents of product packaging.  To

23  satisfy that pleading requirement, Plaintiff needed to plead facts making it plausible that a "significant

24  portion of the general consuming public" acting reasonably in the circumstances could be misled.

25

26  [8] As noted above, beyond these advertisements, Plaintiff relies on a *marketing company's* discussion of
    Burger King's new marketing campaign (Am. Compl. ¶¶ 25-26, 28) and the opinion of "eslogan
27  Marketing Magazine," (*id.* ¶ 36).  These statements are likewise the same sort of generic non-actionable
    statements discussed above and, moreover, these statements also cannot be the basis for a reasonable
28  consumer to rely on for Plaintiff's fraud and misrepresentation claims because they are not statements
    by Burger King.

BURGER KING CORPORATION'S NOTICE AND       14       CASE NO. 4:22-CV-02258-HSG
MOTION TO DISMISS

1  *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 646 (N.D. Cal. 2021) (citation omitted).  Plaintiff has

2  not met this standard because he has not identified a single representation by Burger King regarding the

3  contents of its food packaging, much less regarding the use or non-use of PFAS.  Indeed, the sole

4  references to statements even mentioning packaging are a commercial which "introduces the Product in

5  its packaging" (but does not allege any misstatement) (Am. Compl. ¶ 34), and the CEO of Burger King's

6  parent company's[9] statement that in the past year, it "advanced work on sustainable packaging and

7  recycling," (*id.* ¶ 39).

8         At bottom, Plaintiff simply fails to plausibly plead any fraud.  While he may wish that the FDA

9  never permitted the use of PFAS in food packaging for the Whopper and French Fries, or that the FDA

10  or California acted more quickly to ban certain PFAS, the law is otherwise.  As in *Backus*, both federal

11  and California law is clear that there is "nothing unlawful or unfair about selling [products with

12  packaging] containing [PFAS]."  *Backus*, 378 F Supp. 3d at 854.

13                    **4)    Plaintiff's Negligence-Based Claims Are Further Barred by the Economic
                            Loss Rule (Counts 11 and 14)**

14

15         Plaintiff's negligence-based claims for negligent misrepresentation and negligent failure to warn

16  are additionally barred by the economic loss rule.  This rule "'requires a purchaser to recover in contract

17  for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and

18  beyond a broken contractual promise.'"  *Ladore v. Sony Computer Ent. Am., LLC*, 75 F. Supp. 3d 1065,

19  1075 (N.D. Cal. 2014) (citation omitted); *see also Lusson*, 2016 WL 10932723, at *1.  Plaintiff here fails

20  to allege any "*physical harm* (i.e., personal injury or property damage)."  *Ladore*, 75 F. Supp. 3d at 1075

21  (citation omitted, emphasis original).  Accordingly, his negligence-based claims must be dismissed.

22         **C.     Plaintiff's Omission-Based Claims Likewise Fail (Counts 4, 6, 9 and 14)**

23         Plaintiff's omission-based claims under the FAL for non-disclosure (Count 4), fraudulent

24  concealment or omission (Count 9), and negligent failure to warn (Count 14) also fail because the

25  Amended Complaint fails to allege a duty to disclose and, in any event, there was no non-disclosure.

26  The lack of a duty to disclose also requires dismissal of the constructive fraud claim (Count 6) for this

27  ─────────────────
[9] The Amended Complaint inaccurately identifies Mr. Cil as "Defendant's CEO" (Am. Compl. ¶ 39),

28  but the website it cites is clear that Mr. Cil is the CEO of Defendant's parent company, RBI.  *See id.* ¶
    39 n.26.

1  additional reason. *See Magic Leap, Inc. v. Chi Xu*, No. 19-CV-03445-LHK, 2020 WL 3268659, at *8

2  (N.D. Cal. June 17, 2020).

3      "California courts have generally rejected a broad obligation to disclose[.]" *Wilson v. Hewlett-*

4  *Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  Under California law, a duty to disclose will only

5  arise in "four circumstances": "'(1) when the defendant is the plaintiff's fiduciary; (2) when the

6  defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff;

7  (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant

8  makes partial representations that are misleading because some other material fact has not been

9  disclosed.'" *Kumandan v. Google LLC*, No. 19-CV-04286-BLF, 2022 WL 103551, at *8 (N.D. Cal. Jan.

10  11, 2022) (quoting *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1033 (N.D. Cal. 2014)).  The facts

11  triggering an alleged breach of a duty must be alleged with the specificity required by Rule 9(b).  *Ahern*

12  *v. Apple Inc.*, 411 F. Supp. 3d 541, 575 (N.D. Cal. 2019) ("Rule 9's heightened pleading standard applies

13  to Plaintiffs' allegations regarding Apple's duty to disclose, and '[g]eneralized allegations with respect

14  to exclusive knowledge are insufficient to defeat a dismissal motion.'") (citation omitted).

15      Plaintiff makes only conclusory assertions that Burger King had a "duty" to disclose.  As an

16  initial matter, to succeed on his omission-based deception claims, Plaintiff "must allege [Burger King's]

17  knowledge of a defect"—that is, knowledge that its products contained a type of PFAS that "was widely

18  known to have significant health repercussions" and unsafe for use (Am. Compl. ¶ 67).  *Wilson*, 668

19  F.3d at 1145.  The FDA itself has acknowledged with respect to PFAS that there are "thousands of PFAS

20  chemicals, hundreds of which are used in a wide range of industrial and consumer products with very

21  different chemical structures and chemical and physical properties" and that "[t]he *associated health*

22  *effects for most of these different PFAS are unknown*."[10]  While Plaintiff cites two "studies" by consumer

23  advocacy groups, he does not allege facts making it plausibly that they establish Burger King's

24  knowledge that the specific PFAS chemicals it uses in certain packaging is unsafe notwithstanding the

25  FDA's determination to the contrary.

26

27  _____

28  [10]  U.S. Food & Drug Admin., *Questions and Answers on PFAS in Food* (July 6, 2022), https://www.fda.gov/food/chemical-contaminants-food/questions-and-answers-pfas-food (RJN Ex. D) (emphasis added).

1    Nor can Plaintiff satisfy any of the "four circumstances" in which a duty to disclose applies under

2    California law.  First, Plaintiff does not and cannot allege facts establishing a fiduciary relationship.  *See*

3    *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC,* No. 17-CV-03805-LHK, 2018 WL

4    1710405, at \*12 (N.D. Cal. Apr. 9, 2018).

5    Second, while Plaintiff makes the conclusory allegation that Burger King was "in the sole

6    possession" of information relating to its use of PFAS (Am. Compl. ¶ 163), the Amended Complaint

7    cites a litany of information that was publicly available in 2018, 2019, and 2021 (*see* Section III.B.2,

8    *supra*), and Burger King's use of PFAS prior to Plaintiff's March 2022 purchase was disclosed on the

9    very website of Burger King's parent company that Plaintiff cites in his Amended Complaint.  *See* n.5,

10   *supra*.

11   Third, Plaintiff has not pled active concealment, which requires more than "[m]ere

12   nondisclosure." *Kumandan*, 2022 WL 103551, at \*9.  Plaintiff's conclusory assertion that Burger King

13   "omitted and concealed that the Products contain" PFAS (Am. Compl. ¶ 67) does not meet this

14   heightened burden to plead "affirmative acts of concealment[,]" much less with the particularity required

15   by Rule 9(b).  *Kumandan*, 2022 WL 103551, at \*9.

16   Finally, no allegedly concealed fact "'materially qualif[ies] the facts disclosed,'" *id*. at \*10

17   (citation omitted), because, as discussed above, Plaintiff identifies no statements, much less any

18   actionable statements, that discuss the use or non-use of PFAS in packaging at all.

19   Accordingly, in addition to failing to plead any actionable false or misleading statement, Plaintiff

20   does not plead fraud on an omission theory because he has not plead a duty to disclose.

21   **D.    Plaintiff Cannot Establish A Breach of Any Warranty (Counts 3 and 13)**

22   **1)    Plaintiff Fails to Identify the Terms of Any Express "Warranty"**

23   Plaintiff has also failed to state a claim for breach of express warranty.  To state a cause of action

24   for breach of an express warranty under California law, a plaintiff must allege the "exact terms" of the

25   alleged express warranty, which requires "specifics about what the warranty statement was, and how and

26   when it was breached," and the statement itself must be a "specific and unequivocal written statement"

27   constituting an "explicit guarantee." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F.

28   Supp. 3d 855, 875 (N.D. Cal. 2015) (citation and internal quotation marks omitted); *see also Smith*, 2014

1   WL 989742, at *4.  Plaintiff fails to allege the exact terms of the purported Whopper or French Fries

2   warranty.  Instead, the Complaint asserts only general language regarding a marketing rebranding and

3   food quality, (Section III.B.3., *supra*)*,* which is not the type of "specific and unequivocal" written

4   statement required under California law.  *See also* Cal. Com. Code § 2313; Cal. Civ. Code

5   § 1791.2(a)(2)(b) ("An affirmation merely of the value of the goods or a statement purporting to be

6   merely the seller's opinion or commendation of the goods does not create a warranty.").  As discussed

7   above, "general 'safety' claims are nonactionable[.]" *Mandani*, 2019 WL 652867, at *4; *see also Smith*,

8   2014 WL 989742, at *5 ("Vague statements regarding reliability, dependability, and safety are not

9   actionable express warranties.  District courts within the Ninth Circuit have found that words such as

10  'reliable' and 'dependable' are inherently vague and general, and therefore are non-actionable, and that

11  words regarding 'safety' and 'fitness for use' are not the unequivocal sorts of statements that can give

12  rise to contractual obligations.").  Accordingly, Plaintiff has failed to plausibly allege the existence of

13  an express warranty.

14          **2)      Plaintiff's Song-Beverly Claim Fails Because He Cannot Establish that
                      Burger King's Products are Unfit for Consumption or Fall Below a
15                    Minimum Level of Quality**

16          Nor can Plaintiff plead a claim for violation of the Song-Beverly Act based on a purported breach

17  of implied warranty.  In California, "[t]o breach the implied warranty, a product must lack 'even the

18  most basic degree of fitness for ordinary use.'" *Backus*, 2017 WL 1133406, at *4 (citation omitted).  This

19  warranty "only provides for a minimum level of quality." *Id*.  Plaintiff attempts to meet this standard by

20  claiming that the food products sold by Burger King were not fit for their ordinary use—human

21  consumption—because of the presence of PFAS.  However, even assuming that Plaintiff could establish

22  the presence of PFAS "migrating" onto Burger King's food products (notably, the only testing he cites

23  relates to *packaging*), the Amended Complaint still fails to plead facts plausibly establishing that Burger

24  King's products are wholly unfit for consumption because both the FDA and state of California

25  specifically permit the current (and past) use of PFAS.  *See* Section II.B, *supra*.

26          This Court confronted a nearly-identical situation in *Backus v. Biscomerica*, where it explained

27  that:

28          The FDA did not determine that products that contain PHO are unfit for human

---

> consumption.  Instead they provided a three-year window for further investigation and phasing out. The FDA recognized that people would continue to consume products containing PHO up until the compliance date[.]

*Backus*, 2017 WL 1133406, at *5.  Likewise, here, this Court cannot accept Plaintiff's conclusory characterization of the products at issue as unsafe or unfit for consumption because federal law provides the opposite:  the food packaging used at Burger King for the Whopper and French Fries is approved pursuant to effective FCNs, rendering it not unsafe for human consumption.  *See* 87 F.R. 3949-01; 21 U.S.C. § 348(a); Section III.A.*, supra*; *see also Walker v. B&G Foods, Inc.*, No. 15-CV-03772-JST, 2019 WL 3934941, at *2 (N.D. Cal. Aug. 20, 2019) (dismissing the plaintiff's implied warranty of merchantability claim based on the presence of partially hydrogenated oils [PHOs] in the taco shells at issue when he did not plausibly allege that they were wholly "unfit for human consumption" because FDA permitted use).  This conclusion is further supported by California law, as California has likewise not determined that PFAS make food "unfit" for consumption, instead imposing a phasing-out process. *See* Cal. Health & Safety Code § 109000.  Accordingly, the state has "recognized that people would continue to consume" food products packaged in wrapping containing PFAS until January 1, 2023 (and beyond at amounts below specified levels). *Backus*, 2017 WL 1133406, at *5.  For these reasons, Plaintiff cannot plausibly plead that Burger King's products lack a "minimum level of quality." Plaintiff's Song-Beverly Act claim, accordingly, fails because he has not sufficiently pled a predicate breach of warranty under California law.  *See Birdsong v. Apple Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009).

**E.    Plaintiff's Equitable Claims Must Be Dismissed (Counts 8 and 12)**

Plaintiff has also failed to plead even the most basic elements of his quasi-contract and equitable claims for Money Had and Received (Count 8), Quasi-Contract/Unjust Enrichment (Count 12), and equitable relief under the UCL, CLRA, and FAL.

First, a "claim for restitution of money had and received" arises "only when there has been a total breach—*i.e.*, a total failure of consideration or repudiation." *Brown v. Grimes*, 120 Cal. Rptr. 3d 893, 906 (2011) (holding that the defendant was not entitled to money had and received when he received consideration in the form of referrals and when the trial court did not find that the plaintiff's breach

1   constituted a "total or even substantial breach" of the contract).  Plaintiff cannot satisfy this standard.

2   He bases his claim on alleged "breaches of contract and breaches of the covenant of good faith and fair

3   dealing implied in those agreements."  Am. Compl. ¶ 181.  However, Plaintiff has not plausibly alleged

4   a total failure of consideration—Plaintiff received and consumed Burger King's products.  Am. Compl.

5   ¶ 11; *see also Buckley v. Align Tech., Inc.*, No. 13-CV-02812-EJD, 2015 WL 5698751, *4 (N.D. Cal.

6   2015) (consumer's use of Invisalign failed to establish unjust enrichment).  Relatedly, a Money Had and

7   Received claim requires that Plaintiff plead "'a definite sum, to which [ ]he is justly entitled, has been

8   received by defendant.'" *Id.* (citation omitted).  Here, the Amended Complaint makes no effort to specify

9   a "definite" or "certain" sum, as required to state a claim.  *See id.*  Further, a Money Had and Received

10  claim requires that "the money received by the defendant was *for the use of the plaintiff*." *Fireman's*

11  *Fund Ins. Co. v. Com. & Indus. Ins. Co.*, No. C-98-1060-VRW, 2000 WL 1721080, at *8 (N.D. Cal.

12  Nov. 7, 2000) (emphasis original).  Plaintiff here pleads the opposite—that "Defendant obtained money

13  for its own use and benefit" (Am. Compl. ¶ 181)—thereby acknowledging that the money received was

14  for *Burger King's* use, not Plaintiff's.

15          Additionally, Plaintiff lacks standing to pursue his equitable claims because he pleads adequate

16  remedies at law.  Indeed, rather than plausibly plead that Plaintiff lacks an adequate remedy, the

17  Amended Complaint expressly pleads other remedies based on the same factual basis.  *See* Am. Compl.

18  at pp. 20-37 (pleading other legal claims); Am. Compl. ¶¶ 179, 213 (equitable claims realleging and

19  reincorporating "all paragraphs alleged above").  As this Court has recently held, Plaintiff's claims for

20  relief accordingly fail because they are rooted in the same factual allegations that support other legal

21  claims. *See, e.g., Price v. Apple, Inc.*, No. 21-CV-02846-HSG, 2022 WL 1032472, at *7 (N.D. Cal. Apr.

22  6, 2022) (Gilliam. J.) ("[B]ecause Plaintiff seeks compensation under the UCL and CLRA for the exact

23  same conduct that forms the basis of his equitable relief claims, he has an adequate remedy at law.  Thus,

24  Plaintiff's UCL and CLRA equitable relief claims must be dismissed because the complaint does not

25  allege that legal remedies are inadequate.").  While Plaintiff contends that he "may lack an adequate

26  remedy at law," (Am. Compl. ¶ 106), the Ninth Circuit in *Sonner* "recently rejected this wait-and-see

27  approach."  *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1157 (N.D. Cal. 2021); *Sonner v. Premier*

28  *Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (dismissing equitable claims where plaintiff

1   "concede[d] that she s[ought] the same sum in equitable restitution" as she had "requested in damages

2   to compensate her for the same past harm").  Indeed, the face of the Amended Complaint seeks in

3   damages the same sums sought in equitable restitution.  *See* Am. Compl. ¶ 135 (requesting compensatory

4   damages); ¶¶ 157, 168, 178 (requesting "actual losses and damages"); ¶ 196 (requesting "full refunds");

5   ¶¶ 205, 212 (requesting "actual damages"); ¶ 230 (requesting "all damages").  Accordingly, the claims

6   for equitable relief must each be dismissed.

7         **F.     Plaintiff Has Failed to Plead A Claim for Medical Monitoring**

8         Plaintiff also fails to plead the facts necessary to support his demand for medical monitoring in

9   connection with his Negligent Failure to Warn claim (Am. Compl. ¶ 240).  To state a cognizable demand

10  for medical monitoring, Plaintiff must allege facts plausibly establishing five factors:   "'(1) the

11  significance and extent of the plaintiff's exposure to chemicals; (2) the toxicity of the chemicals; (3) the

12  relative increase in the chance of onset of disease in the exposed plaintiff as a result of the exposure,

13  when compared to (a) the plaintiff's chances of developing the disease had he or she not been exposed,

14  and (b) the chances of the members of the public at large of developing the disease; (4) the seriousness

15  of the disease for which the plaintiff is at risk; and (5) the clinical value of early detection and

16  diagnosis.'"  *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1055 (N.D. Cal. 2015) (citation omitted).

17        In *Riva*, the court held that the plaintiffs failed to sufficiently allege the first factor when they

18  alleged only that increased risk of the disease occurred "at or above threshold levels" of exposure without

19  alleging "what threshold level of exposure creates the increased risk" or that the plaintiffs had exceeded

20  this threshold level.  *Id.* at 1057.  The court further held that the plaintiffs failed to sufficiently allege the

21  second factor when they did not cite any studies specifically linking the alleged toxin at issue to

22  plaintiffs' specific theory of injury—an increased risk for lung cancer in humans.  *See id.* at 1059.

23  Finally, the court held that the plaintiffs failed to sufficiently allege the third factor when there were

24  many alternative sources of the alleged toxin.  *See id.* at 1062.

25        Likewise, here, Plaintiff makes only a conclusory request for medical monitoring.  He fails to

26  plausibly allege anything about "the significance and extent" of Plaintiff's exposure to PFAS, or the

27  "relative increase in the chance of onset" of any disease based on exposure to PFAS from Defendant's

28  product packaging for the Whopper and French Fries (as opposed to other sources).  And, Plaintiff gives

1    no allegation at all about the fifth element:  clinical value of early detection and diagnosis.  As such, the

2    claim for medical monitoring must be dismissed.

3    **V.     PLAINTIFF LACKS STANDING TO SEEK PROSPECTIVE INJUNCTIVE RELIEF**

4            To establish Article III standing for prospective injunctive relief, Plaintiff must show that "he

5    has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient

6    likelihood that he will again be wronged in a similar way.'"  *Bates v. United Parcel Serv., Inc.*, 511 F.3d

7    974, 985 (9th Cir. 2007) (citations omitted).  Here, Plaintiff seeks injunctive relief requiring "accurate

8    disclosures" (*e.g.,* Am. Compl. ¶ 107) and claims that "as long as Defendant continues to market its

9    products as 'safe' and 'sustainable,' he will be unable to make informed decisions about whether to

10   purchase Defendant's Products" and is "likely to be repeatedly misled by Defendant's conduct, unless

11   and until Defendant is compelled to ensure that the Products marketed, labeled, packaged, and advertised

12   as safe and sustainable, are in fact safe and sustainable" (*id*. ¶ 12).  Plaintiff does not allege that he has

13   suffered any physical harm, but instead claims informational injury only, which he asserts can be

14   remedied by disclosures of his choosing.  This fails to satisfy the standing requirements for two reasons.

15   *First*, as the Supreme Court recently confirmed, "'[a]n asserted informational injury that causes no

16   adverse effects cannot satisfy Article III.'"  *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021)

17   (citation omitted).  *Second*, Plaintiff's entire theory of standing hinges on the assertion that Burger King's

18   products are not "in fact safe and sustainable."  This assertion, however, is inconsistent with and an

19   impermissible collateral attack on the FDA's determination that the PFAS used in Burger King's

20   packaging for the Whopper and French Fries are not unsafe.  As explained in detail above, Burger King

21   only permits the use of PFAS approved by the FDA.  *See*, *e.g.*, Beamonte Decl. at ¶ 4.  Plaintiff does not

22   allege otherwise.  Thus, Burger King's products "shall not, by reason of bearing or containing such a

23   food additive in accordance with the regulation or notification, be considered adulterated" and are not

24   unsafe.  21 U.S.C. § 348(a); *see also* 21 U.S.C. § 342(a)(1).  Nor has the FDA or the state of California

25   made it illegal to use PFAS.  *See* n.1*, supra*; Cal. Health & Safety Code § 109000.  These regulations

26   are clear that Burger King's products are not unsafe.  Plaintiff's conclusory assertions to the contrary

27   fail as a matter of law and cannot create Article III standing.  *See Backus*, 2017 WL 1133406, at *5

28   (rejecting allegation that products containing PHOs are "unfit" for consumption as implausible because

FDA permitted use).[11]

## VI.   IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS OR STAY THE CASE UNDER THE PRIMARY JURISDICTION DOCTRINE

In the alternative, this Court should dismiss or stay the case under the primary jurisdiction doctrine, which "'is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts.'" *Backus v. Gen. Mills, Inc.,* 122 F. Supp. 3d 909, 933 (N.D. Cal. 2015) (quoting *Syntek Semiconductor Co v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)).   "A court presented with an issue to which agency deference is due under the primary jurisdiction doctrine has the discretion either to stay the case or to dismiss it without prejudice." *Swearingen v. Yucatan Foods, L.P.*, 59 F. Supp. 3d 961, 964 (N.D. Cal. 2014).   "'Normally, if the court concludes that the dispute which forms the basis of the action is within the agency's primary jurisdiction, the case should be dismissed without prejudice so that the parties may pursue their administrative remedies.'" *Id.* (citation omitted). A dismissal or stay is warranted here, particularly as to the request for prospective injunctive relief as the FDA is currently considering a citizens' petition commenced by consumer advocacy groups (including Consumer Reports, the author of one of the reports on which Plaintiff relies), which, like Plaintiff, seeks to ban the use of all PFAS.   *See* Docket No. FDA-2021-P-0653, Citizens Petition from Environmental Defense Fund (July 1, 2021), available at https://www.regulations.gov/document/FDA-2021-P-0653-0001 (RJN Ex. E).

Courts in this Circuit generally consider four "non-exclusive" factors set out in *Syntek*: "'(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.'" *Backus,* 122 F. Supp. 3d at 933.

Here, each factor weighs in favor of applying the primary jurisdiction doctrine.   Initially, the FDA has made clear that the FCNs permitting the use of PFAS currently remain effective.   Regarding

---

[11] Further, by the time the Court considers this Motion, California's new law regulating the use of PFAS will be in effect, mooting the request for prospective injunctive relief. *See* Cal. Health & Safety Code § 109000 (listing effective date as January 1, 2023).

1  Plaintiff's request for prospective injunctive relief, should Plaintiff wish to make regulatory changes, the

2  appropriate avenue for doing so is to submit information to the FDA.  Indeed, a group of consumer

3  advocates have done precisely that and, in response their petition, the Director of the FDA's Office of

4  Food Additive Safety, Dr. Dennis M. Keefe, advised that the petition "is currently under active

5  evaluation" by staff.  *See* FDA-2021-P-0653, Letter from FDA CFSAN to Environmental Defense Fund

6  (Jan. 14, 2022), available at https://www.regulations.gov/document/FDA-2021-P-0653-0003 (RJN Ex.

7  F).

8      Second, Congress has vested the FDA with "authority to regulate food safety," including, as

9  relevant here, approval of food contact substances.  *Id*.; *see also* 21 U.S.C. § 348.  And, "for the same

10  reasons, it is clear that the [FFDCA] subjects the food industry to comprehensive regulation."  *Backus,*

11  122 F. Supp. 3d at 934.  Finally, "determinations of food ingredient safety require both specialized

12  expertise and uniformity in administration."  *Id*.  As the relevant regulatory framework makes clear, the

13  FDA makes its determination "based on the data and information" submitted to it (21 U.S.C.

14  § 348(h)(2)(A)), which is more appropriate than attempting to achieve regulatory reform through the

15  courts.  The FDA routinely "reviews new scientific information on the authorized uses of food contact

16  substances to ensure that these uses continue to be safe" (RJN Ex. A) and is even doing so currently in

17  response to the citizens' petition (RJN Ex. F).  These factors all support dismissal or a stay under the

18  doctrine of primary jurisdiction.

19  **VII.   CONCLUSION**

20      For all of the foregoing reasons, Plaintiff's Amended Complaint should be dismissed in its

21  entirety, without leave to amend, pursuant to Rules 12(b)(1) and 12(b)(6).  In the alternative, this Court

22  should dismiss or stay the action pending further guidance from the FDA, which has primary jurisdiction.

23

24  Dated: July 25, 2022            Respectfully submitted,

25                      WEIL, GOTSHAL & MANGES LLP

26                      By:  */s/ David R. Singh*

27                         DAVID R. SINGH

28                         DAVID R. SINGH

1        david.singh@weil.com

AMY LE

2        amy.le@weil.com

WEIL, GOTSHAL & MANGES LLP

3        201 Redwood Shores Parkway, 6th Floor

Redwood Shores, CA 94065

4        Telephone: (650) 802-3000

5        Facsimile: (650) 802-3100

6        DIANE SULLIVAN (*pro hac vice* forthcoming)

diane.sullivan@weil.com

7        WEIL, GOTSHAL & MANGES LLP

8        767 Fifth Avenue

New York, NY 10153

9        Telephone:  (212) 310-8000

Facsimile:  (212) 310-8007

10

11       Attorneys for Defendant BURGER KING

CORPORATION.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28